IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 122-033 |
| | ) | |
| KANSAS SMITH | ) | |

**O R D E R**

Defendant filed a motion to suppress, arguing law enforcement (1) lacked probable cause to conduct a vehicle stop and search that led to the discovery of a controlled substance; and (2) failed to Mirandize Defendant during a later interview. (Doc. no. 14.) After careful consideration of the briefs, the Court **DENIES** Defendant's motion to suppress.

**I.    BACKGROUND**

On April 13, 2022, Defendant was charged via an information with two counts of possession of a controlled substance in violation of 21 U.S.C. § 844(a). (Doc. no. 1.) The facts alleged by Defendant regarding the vehicle stop and search, taken from her brief, are as follows:

> On the night of October 29, 2021, Adam Duskin was driving a white truck towards the entrance of Gate 5 of the Fort Gordon Military Base. [Defendant] was seated next to him. Mr. Duskin's vehicle approached the gate but Lieutenant Lewis of the Department of Emergency Services Guard denied entry and told him to turn the vehicle around and leave the gate area. Mr. Duskin turned the vehicle around and shortly thereafter, the vehicle began to veer into the middle of the road finally coming to a stop at the intersection of Avenue of the State and 47th Street, just outside Gate 5. When officers approached the vehicle, they found Mr. Duskin and [Defendant] passed out. Lieutenant Lewis contacted EMS and waited for them to arrive on the scene.

>> Approximately 7 minutes later, Sergeant Ivan Williams and SPC John Morrow conducted a search of the White Truck finding a small pink box containing 2-4 baggies of an unknown power substance, 2 blue straws, and a rolled up twenty dollar bill.
>> Both Mr. Duskin and [Defendant] were transported to Dwight D. Eisenhower Medical Center for medical treatment

(Doc. no. 14, pp. 1-2.) The events giving rise to Defendant's alleged Miranda violation occurred five days later on November 3, 2021:

>> On November 3, 2021, Investigator Guin interrogated [Defendant] regarding the substances found in the white truck. Specifically, Investigator Guin elicited the following statements from [Defendant]: that the unknown controlled substance was "Rocky"—an opioid used to treat pain; that [Defendant] purchased the drugs from a friend of a friend in Dublin; that she purchased $60 worth; that she consumed some of the substance; and that Mr. Duskin had no knowledge that she possessed this substance.
>> There is no evidence that these statements were recorded, nor that they were mirandized, or sworn to.

(Id. at 2.)

## II. THERE IS NO BASIS FOR SUPPRESSION OF EVIDENCE FOUND IN THE VEHICLE OR SUPRRESSION OF DEFENDANT'S INTERVIEW STATEMENTS

Defendant bears the burden of proving facts that entitle her to relief. United States v. Richardson, 764 F.2d 1514, 1527 (11th Cir. 1985). Defendant's facts, as alleged, do not show any violations of the Fourth and Fifth Amendment or otherwise provide a basis to suppress evidence obtained from the October 29th search and November 3rd questioning.

### A. The Vehicle Stop and Search Was Supported by Probable Cause and Exigent Circumstances

Defendant contends the officers lacked a reasonable basis to seize the truck driven by Mr. Duskin. However, Defendant also admits the truck veered toward the middle of the road and then stopped at an intersection. Defendant does not allege the officers stopped the truck;

she merely states they "approached" the already stopped vehicle.  And, upon approach, the officers discovered Defendant and Mr. Duskin unconscious.

The Court finds that officers at a security checkpoint at a military installation have reasonable suspicion to stop a vehicle that veered towards the middle of the road then stopped at an intersection by that checkpoint for an extended amount of time.  Regardless, the officers did not "seize" the already stopped truck, and no level of suspicion is required to merely approach a vehicle sitting in the middle of the road.  See Miller v. Harget, 458 F.3d 1251, 1257 (11th Cir. 2006) ("[P]olice officer does not seize an individual merely by approaching a person in a parked car.").

The Court also finds probable cause for the subsequent search.  An officer must generally obtain either consent or a warrant based on probable cause before conducting a search.  United States v. Tamari, 454 F.3d 1259, 1261 (11th Cir. 2006).  However, as an exception to that rule, "the search and seizure of vehicles without a warrant is permissible when the police have probable cause to believe a vehicle contains contraband."  United States v. Virden, 488 F.3d 1317, 1321 (11th Cir. 2007) (citations omitted).  Such probable cause exists when there is "a fair probability that contraband or evidence of a crime will be found." United States v. Sokolow, 490 U.S. 1, 6 (1989) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  The officers here had probable cause to search the truck after they discovered Defendant and Mr. Duskin passed out in the truck after their unusual drive away from the security gate.  The situation rang with the probability of driving illegally while under the influence of drugs or alcohol, and an equally obvious probability the vehicle would contain evidence related to this offense.

Further, the search was also justified by the exigent circumstances of needing to determine the cause of the medical emergency so that medical staff could render treatment. See United States v. Holloway, 290 F.3d 1331, 1336 (11th Cir. 2002) ("[N]umerous federal and state courts have upheld warrantless emergency entries and searches based on endangerment to life."). Indeed, "the most urgent emergency situation excusing police compliance with the warrant requirement is, of course, the need to protect or preserve life." Id. at 1335.

**B.  The Officers Had No Duty to Mirandize Defendant Because She Was Not In Custody at the Time of Her Interview**

The facts alleged by Defendant do not establish a constitutional requirement to Mirandize Defendant on November 3rd. Under Miranda v. Arizona, 384 U.S. 436 (1966), prior to conducting a custodial interrogation, law enforcement officers must warn the interview subject that he has a "right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." The Supreme Court has defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444. When analyzing whether a defendant is in custody and whether Miranda warnings are required, the Court must decide whether "under the totality of the circumstances, a reasonable man in the suspect's position would feel a restraint on his freedom of movement fairly characterized as that degree associated with a formal arrest to such extent that he would not feel free to leave." United States v. Paige, 541 F. App'x 620, 622 (11th Cir. 2007) (*per curiam*) (citing United States v. Muegge, 225 F.3d 1267, 1270 (11th Cir. 2000) (*per curiam*) (citation omitted).) Defendant

bears the burden to prove she was in custody for the purposes of Miranda. United States v. Peck, 17 F. Supp. 3d 1345, 1355 (N.D. Ga. 2014) (citing United States v. de la Fuente, 548 F.2d 528, 533 (5th Cir. 1977) [1]).

Defendant has alleged no facts to show she was in custody pursuant to Miranda. She merely alleges Investigator Guin "interrogated" her without advising her of her rights, providing no information on where and how that questioning took place. If the interview took place by phone, as the government alleges in its response brief, there is no colorable argument that Defendant was in custody. See United States v. Hewlett, 471 F. Supp. 3d 724, 739 (E.D. Va. 2020) (telephone interview not custody for Miranda); see also State v. Halverson, 2021 WI 7, ¶ 31, 395 Wis. 2d 385, 403, 953 N.W.2d 847, 855; State v. Mills, 2012 UT App 367, ¶ 24, 293 P.3d 1129, 1136. The Court therefore has no basis to find Defendant was in custody and entitled to a Miranda warning. See Richardson, 764 F.2d at 1527 ("[M]otion to suppress must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented.").

### C. The Motion Does Not Comply With Local Criminal Rule 12.1

Even if Defendant had alleged facts in the motion that raised a colorable argument for suppression, which she does not, the motion would still provide no basis for relief because it violates Local Criminal Rule 12.1, which provides as follows:

> Unless otherwise ordered by the Court, every motion filed in a criminal proceeding shall be accompanied by a memorandum of law citing supporting authorities. Every factual assertion in a motion, response, or brief shall be supported by a citation to the pertinent page in the existing record or in any affidavit, discovery material, or other evidence filed with the motion. Where

---

[1] The Eleventh Circuit adopted as binding precedent all opinions handed down by the former Fifth Circuit prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

5

allegations of fact are relied upon that are not supported by the existing record, supporting affidavits shall be submitted.

IV. **CONCLUSION**

For the above reasons, the Court **DENIES** the motion to suppress. (Doc. no. 14.)

SO ORDERED this 22nd day of July, 2022, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA